SHARP, Judge,
concurring in part and dissenting in part.
I dissent only on the affirmance of the summary judgment as to Count I; otherwise, I endorse the per curiam opinion.
The lower court granted summary judgment for Dr. Saha because it found his relationship with White and Davis was employer — independent contractor. I question whether the record in this case is so clear that a jury might not have found the casual, verbal, and long-term relationship between White and Dr. Saha was a kind of partnership or joint venture, which would impose vicarious liability on Dr. Saha. I think the status of the parties should have been submitted to a jury. Gregg v. Weller Grocery Company, 151 So.2d 450 (Fla. 3d DCA 1963), 41 Am.Jur.2d Independent Contractor § 53 (1968).
Further, even if the relationship between White-Davis and Dr. Saha was one of employer — independent contractor, the record discloses disputed facts upon which a jury could find the general rule of non-liability should not apply here.[1] Read in a light most favorable to the appellants,[2] the depositions and affidavit in the record establish that Dr. Saha’s excavated pond had become a favorite swimming hole for the neighborhood children. For two summers since it was dug, and while it was being enlarged, they regularly climbed the fence and swam in the pond, and played on the “mountains” or “hills” of dirt created by the drag-line operation.
The children thought they had Dr. Saha’s permission to swim in the pond. He gave permission to one child to swim there and an unidentified worker on a bulldozer told another she could swim in the pond. Dr. Saha frequently visited the property to feed his livestock. The children saw him and his workers on the property while they were swimming. One child built a diving board at the deep end of the pond, which they played on. The workers as well as Dr. Saha saw them and they must have been aware that children were swimming in the pond on a frequent basis.
The excavation and digging process involved the simultaneous running of a pump to drain down the water in the pond so that dirt could be dug out along the slopes or edges. White’s six inch pump ran from time to time at the site, for at least a year prior to the accident. Dr. Saha must have been aware of it, due to his frequent visits to the property. Aside from running on gasoline rather than diesel fuel, White’s pump was not materially different than Davis’, the pump involved in the child’s death. Both were six inch pumps, used in similar ways to lower the water level in the pond.
White and Davis were both aware that various neighborhood children regularly trespassed on Dr. Saha’s property to swim and play on the dirt piles. White testified you would have to be blind not to be aware of the children’s presence. Both were concerned that a child might be injured by their equipment (backhoes, dragline, tractors) or trucks driven onto and off the property by other small business independent contractors.
On the day the child drowned, Davis started the pump running early in the morning. He noticed children had put mud on his backhoe and tractor parked near the pond. It was still wet, and had small feet and hand prints on it. Near the banks he noticed many children’s bare foot prints. He also knew the hose he was using to pump the water out of the pond was mashed at the intake end, and would not have pulled enough water had it not been *523 for an eighteen inch gash along the side near the end, and one closer to the surface. The holes were unscreened and unshielded. The hose was under water, and unmarked. The pump and hose were at the deepest part of the pond, near the diving board the children had made and used often. Despite all of these indicia of the presence of children, Davis left the pump running, unmarked and unsupervised at 11:00 a.m. when he left for lunch. He did not return until 4:00 p.m., when he learned of the accident.
The scenario of this tragedy, although disputed in part by appellants, could, I think, enable a jury to find liability on the part of Dr. Saha for his own negligence in not taking reasonable precautions to protect the children from injury resulting from their contact with the dangerous machinery operating on his land.
A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety-
Restatement (Second) of Torts § 334 (1965).
A Florida case which appears to apply this Restatement principle is Maldonado v. Jack M. Berry Groves Corp., 351 So.2d 967 (Fla.1977). A three year old child accompanied his parents to the owner/defendant’s grove, where they picked fruit as part of a crew hired and supervised by an independent contractor. An employee of the independent contractor ran a “goat” to lift tubs of fruit into trucks. He was operating the vehicle in reverse, without a rearview mirror, when he ran over the child. The Maldonado court based the grove owner’s liability on the fact that the owner knew children were present with their parents in the grove, although it tried to discourage the practice of bringing the children; and it knew the operation of the “goat” near young children created a dangerous situation for them. The court held that the fact that the goat was used by an independent contractor “will not shield an employer/landowner from legal liability, if the employer/landowner was negligent in failing to take sufficient precautions to alleviate the dangerous situation.” Id. at 968. Summary judgment for the landowner was reversed, as it should be in this case.
An additional exception to the rule of non-liability for torts of independent contractors exists for work done on a landowner’s land which is dangerous by its nature or likely to cause a special risk of harm to others unless special precautions are taken. Restatement (Second) of Torts § 416 (1965); 2 Fla.Jur.2d Agency & Employment § 113 (1977). Under these circumstances, the independent contractor defense is not available to the landowner. See Rayonier, Inc. v. Bryan, 249 F.2d 405 (5th Cir.1957); Rohlfs v. Weil, 271 N.Y. 444, 3 N.E.2d 588 (1936); Rickman Brothers Company v. Miller, 131 Ohio St. 424, 6 Ohio Op. 119, 3 N.E.2d 360 (1936).
Florida cases have recognized this exception. See Maule Industries, Inc. v. Messana, 62 So.2d 737 (Fla.1953) (damages caused by independent contractor pumping water on landowner’s land, which resulted in flooding and damage to plaintiff’s crops); Stuyvesant Corp. v. Stahl, 62 So.2d 18 (Fla.1952) (hotel liable when third party injured by employee of independent contractor who had parking concession, and employee was driving an automobile in the course of his employment); Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978) (improper loading of cargo on airplane by independent contractor); Ross v. Heitner, 156 So.2d 869 (Fla. 3d DCA 1963) (damage caused by independent contractor’s use of chemicals in exterminating pests in structure). Where there is evidence to support it, the question of whether the activity is dangerous should be resolved by the jury.[3]
*524 In Florida Power & Light Company v. Price, 170 So.2d 293 (Fla.1964), the court refused to apply this rule to the employee of an independent contractor who was injured by another employee, in a suit against the land or easement owner, because the injured person was an employee rather than a member of the public. However, it reaffirmed the exception as stated by the district court of appeals for injuries to a member of the public:
As to such work, liability cannot be evaded by employing an independent contractor — unless proper precautions are taken. The taking of these precautions, it is said, is a non-delegable duty owing to third persons who may sustain injuries from the work; and in such instances, the contractor is considered an agent or servant for whose act his employer is responsible. Whether work of a given character is to be regarded as inherently or intrinsically dangerous is to be determined by applying the test of whether danger inheres in the performance of the work ... and it ⅛ sufficient if there is a recognizable and substantial danger inherent in the work, even though a major hazard is not involved.
Id. at 295.
This record contains a sufficient basis for a jury to find the work being done on Dr. Saha’s premises was inherently dangerous, or dangerous to known child trespassers, and therefore liability on the part of the landowner could be premised on his own negligent failure to take precautions[4] or on vicarious liability for his independent contractor’s failure to do so.[5] For these reasons I think summary judgment was improperly entered on Count I (the negligence count) in this case.

. The general rule of an employer’s lack of liability for the torts of a general contractor has so many exceptions one authority suggests the exceptions have become the rule. Annot., 96 A.L.R.3d 1213 (1979).

. Holl v. Talcott, 191 So.2d 40 (Fla.1966).

. Channell v. Musselman Steel Fabricators, Inc., 224 So.2d 320 (Fla.1969); Hill v. Walker’s Cay Air Terminal, Inc., 405 So.2d 198 (Fla. 4th DCA *524 1981); 41 Am.Jur.2d Independent Contractor § 53 (1968).

. Maldonado v. Jack M. Berry Groves Corp., 351 So.2d 967 (Fla. 1977).

. Channell, 224 So.2d 320.